# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PHENIX LONGHORN LLC,<br><br>          Plaintiff,<br><br>v.<br><br>AU OPTRONICS CORPORATION,<br>HISENSE ELECTRONICA MEXICO,<br>S.A. DE C.V., HISENSE USA<br>CORPORATION, HISENSE VISUAL<br>TECHNOLOGY CO., LTD., and DOES 1–10,<br><br>          Defendants. | **CIVIL CASE NO. 2:23-cv-00477-RWS-RSP**<br><br>**JURY TRIAL DEMANDED** |
| PHENIX LONGHORN LLC,<br><br>          Plaintiff,<br><br>          v.<br><br><br>INNOLUX CORPORATION and<br>DOES 1–10,<br><br>          Defendants. | **CIVIL CASE NO. 2:23-cv-00478-RWS-RSP**<br><br>**JURY TRIAL DEMANDED** |

**P.R. 4-3 DECLARATION OF JOSEPH MCALEXANDER IN SUPPORT OF**
**PLAINTIFF'S CLAIM CONSTRUCTION POSITIONS RELATING TO DEFINITENESS**

I, Joseph McAlexander, hereby declare as follows:

## I.    INTRODUCTION

1.    I have been retained by Phenix Longhorn LLC ("Phenix" or "Plaintiff") concerning the above-captioned Civil Action proceeding involving U.S. Patent No. 7,233,305 ("the '305 Patent") and U.S. Patent No. 7,557,788 ("the '788 Patent") (collectively, the "Asserted Patents").

2.    This declaration contains statements of my opinions formed to date and the associated reasoning in support of my opinions. I reserve the right to offer additional opinions based on further review of the materials of this case, or any related proceedings, including opinions and/or testimony of other relevant witness, including other expert witnesses retained in this matter.

3.    I am being compensated by Plaintiff at my standard hourly consulting rate of $625.00 per hour for my time spent on this matter. My compensation is not contingent on the outcome of this Civil Action or on the substance of my opinions.

4.    I have no financial interest in Plaintiff.

## II.    EDUCATION AND WORK HISTORY

5.    I am a Registered Professional Engineer (#79454) and the President of McAlexander Sound, Inc. I hold a Bachelor of Science degree in Electrical Engineering from North Carolina State University. I am a member of a number of professional organizations, including the Institute of Electrical and Electronics Engineers, Inc. (IEEE) and the National Society of Professional Engineers. I have been associated with the integrated circuit and electronics industry as a designer and consultant for the past fifty-two (52) years. I am a named inventor on thirty-one (31) U.S. patents and a number of foreign patents, including patents directed to current sensors, motion sensors, timing and voltage/current control, signal generation and detection, and conditional response circuits.

6.      My skills and experience are in areas of circuit design, simulation, layout and analysis, device fabrication and assembly, testing, marketing, control system design and analysis, manufacturing operations, and respective areas of quality, reliability, and defect/failure analysis. Specifically, I have:

- designed and managed development, testing, and evaluation of devices including Dynamic Random Access Memories (DRAMs), Static Random Access Memories (SRAMs), Charge Coupled Devices (CCDs), Shift Registers (SRs), and functional circuits including I/O buffers for address and data, decoders, clocks, sense amplifiers, fault tolerant, parallel-to-serial data paths for video applications, level shifters, converters, pumps, and logic, as well as wireless communication systems and MEMs applications;

- managed operations including engineering, training, and quality assurance for device fabrication, assembly, test, analysis, and reliability assessment, as well as manufacturing control;

- performed testing, analysis, and control involving use of mechanical calibration and measuring equipment, including optical, scanning e-beam, IR, capacitive, and laser using phase contrast and Fast Fourier Transform (FFT) for High Aspect Ratio Inspection (HARI) applications; audio and video system design and installation;

- taught courses in solid state device physics, integrated circuit design, integrated circuit fabrication, and statistical control;

- provided expert services, investigating both process and design technologies of various devices (microprocessor and controller, memory, programmable logic, card, tag, module, mixed signal, custom, and other), systems (PC and peripheral, computer, control, laser measurement, switch, architecture, software, and other), and consumer products (medical,

TV, telephone, VCR, facsimile, copier, lighting, game, pressure sensors, and other); provided nuclear radiation hardness testing services for military and space clients; managed the design and installation of audio sound and video systems for private and commercial enterprises.

7.      I also have experience performing intellectual property valuation and patent portfolio work for companies. For example, when I worked at RMC Management, I conducted numerous patent portfolio valuations and negotiated licenses. Also, I was part of a consultant team with ST Microelectronics that performed patent portfolio valuations and negotiated licenses on behalf of ST Microelectronics.

8.      Because of my background, training, and experience, I am qualified to provide the expert opinions within this declaration regarding the technology described and claimed in the Asserted Patents. A more detailed record of my professional qualifications is set forth in the attached Appendix A, which is my curriculum vitae, including a list of publications, awards, research grants, and professional activities.

## III.    MATERIALS CONSIDERED

9.      In forming my opinions, I have reviewed the Asserted Patents and their prosecution histories.

10.     In reaching my opinions, I have relied upon my experience in the field and also considered the viewpoint of a person of ordinary skill in the art ("POSITA") at the time of the earliest claimed priority date of the Asserted Patents. As explained below, I am familiar with the level of a person of ordinary skill in the art regarding the technology at issue as of that time.

## IV.    LEGAL STANDARDS

11.     I am not an attorney but have been instructed in and applied the law as described in this section.

### A.     Claim Construction

12.     I have been informed and understand that the words of a patent claim are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. The person of ordinary skill in the art is deemed to read the claim term or claim limitation not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.  I understand that claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) a patentee sets out a definition and acts as his or her own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution.

13.     I have been informed and understand that the first step in claim construction is to look to the language of the claims themselves.  I understand it is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee may exclude others from using.

14.     I have been informed and understand that claims should also be read in view of other claims of the patent, both asserted and unasserted.  I understand that claim terms are normally used consistently throughout the patent, and therefore the usage of a term in one claim can often help in understanding the meaning of the same term in other claims.  Further, I understand that differences among claims can also be a useful guide in understanding the meaning of particular claim terms.  As a specific example, I understand that the presence of a dependent claim with a particular limitation gives rise to a presumption that this limitation is not present in the independent claim from which it depends.

15.     I have been informed and understand that claims must be read in view of the specification, of which they are a part.  But while claim terms are understood in light of the

specification, a claim construction must not import limitations from the specification into the claims.  Absent limiting circumstances, a patentee is entitled to the full breadth of claim scope supported by the claims and specification.

16.     I have been informed and understand that a court may rely on extrinsic evidence to shed useful light on the relevant art. Though extrinsic evidence is generally less significant and less reliable than intrinsic evidence, the court may rely on extrinsic evidence at least to (1) help educate the court regarding the field of the invention, and (2) determine what a person of ordinary skill in the art would understand the claim terms to mean.

17.     I have been informed and understand that a patent claim is invalid if it is indefinite. I further understand that to satisfy the definiteness requirement, a claim must inform a person of ordinary skill in the art of the claimed invention's scope with reasonable certainty when read in view of the specification and prosecution history.

18.     I have been asked to review the claims and provide my opinion regarding the meaning of the claims from the perspective of one of ordinary skill in the art.  My opinions on claim construction expressed in this Declaration are from the perspective of, and based upon the knowledge of, a person of ordinary skill in the art at the time of the invention, and are consistent with my understanding as stated above.

**B.      Person of Ordinary Skill in the Art**

19.     I am informed and understand that, in the field of patent law, a POSITA is a hypothetical person who is presumed to have known the relevant art at the time of the invention. I understand that the facts that may be considered in determining the level of ordinary skill in the art include: (a) the types of problems encountered in the art; (b) prior art solutions to those problems; (c) the rapidity with which innovations are made; (d) the sophistication of the technology at issue; and (e) the educational level of active workers in the field.

20.     I am informed that the "time of invention" I should use for the purpose of providing my opinions in this declaration is June 11, 2003, the date of the filing of Provisional Patent Application No. 60/477,680 (the "'680 Provisional Application").

21.     In forming my opinions expressed in this declaration, I relied upon my knowledge, skill, experience, training, and education in the relevant field of the art, and have considered the viewpoint of a POSITA at the time of invention.  My opinions, therefore, represent the view of a POSITA as of June 11, 2003.

22.     I am informed that Plaintiff's definition of a POSITA requires "at least a bachelor of science degree in physics, electrical engineering, or the equivalent thereof and three (3) years of experience in circuit design or display technologies."  Additionally, I am informed that Plaintiff's definition of a POSITA also requires a "knowledge of integrated circuits, gamma correction, and storage of gamma correction voltage values within memory, and would have understood how to search available literature for relevant publications."

23.     I agree to Plaintiff's proposed definition of a POSITA and further agree to apply the same definition.  I may, however, offer additional or different definitions of a POSITA in other related matters based on review of the materials in those cases.

24.     It is my opinion that I qualify as a POSITA under Plaintiff's proposed definition.

## V.     THE '788 PATENT

25.     The '788 Patent, entitled "Gamma Reference Voltage Generator," was filed on May 1, 2007, and claims priority to the '680 Provisional Application, and names Richard V. Orlando and Trevor A. Blyth as co-inventors.  *See* Dkt. 1-2 at 2.  The '788 Patent discloses a programmable integrated circuit comprising non-volatile storage cells which can be programmed with gamma reference voltages via a multiplexer and then output to displays, including LCDs. *See id.* at 2:16-

38. The claims of the '788 Patent are directed to methods of programming and calibrating such displays. *See id.* at 7:23 – 8:48.

26. The '788 Patent was filed on May 1, 2007 (Appl. No. 11/743,014) and is, therefore, subject to pre-AIA review.

27. I understand that the application resulting in the '788 Patent (Patent Application No. 11/743,014) was filed on May 1, 2007. I further understand that, on July 22, 2008, the Examiner entered a Non-Final Office Action rejecting all claims under 35 U.S.C. § 103. *See* Phenix_AUO_Hisense_0000502-508; Phenix_Innolux_0000502-508.

28. Specifically, Claims 1 and 3-5 were rejected under 35 U.S.C. § 103 as being unpatentable over Liaw (Phenix_AUO_Hisense_0000504-506; Phenix_Innolux_0000504-506), while Claims 2 and 6 were rejected under 35 U.S.C. § 103 as being unpatentable over Liaw in view of Matsui (Phenix_AUO_Hisense_0000507; Phenix_Innolux_0000507). No rejections under pre-AIA § 112 ¶ 2 were made by the Examiner during prosecution of the application.

29. I understand that, on October 22, 2008, Applicant filed a response to the Non-Final Rejection. *Id.* at Phenix_AUO_Hisense_0000479-490; Phenix_Innolux_0000479-490. Claims 1 and 4 were amended to correct non-substantive errors; Claims 2, 3, and 6 were left unchanged; and Claim 5 was amended to delete "wherein said means for executing said predetermined algorithm is not required subsequent to the calibrating step." *Id.* at Phenix_AUO_Hisense_0000480-483; Phenix_Innolux_0000480-483.

30. I understand that, after correcting non-substantive errors with the drawings, a Notice of Allowance was entered on March 5, 2009 (*id.* at Phenix_AUO_Hisense_0000458-460; Phenix_Innolux_0000458-460), and the '788 Patent issued on July 7, 2009 (*id.* at Phenix_AUO_Hisense_0000449; Phenix_Innolux_0000449).

## VI.    DEFINTINESS OF THE '788 PATENT'S CLAIM TERMS

31.    I understand that Defendants contend that the following claim terms as used in claim 1 of the '788 Patent are indefinite: (i) "gamma reference control capability"; (ii) "control circuit"; (iii) "means for executing a predetermined algorithm"; (iv) "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm"; (v) "predetermined algorithm"; and (vi) "optimizing said gamma reference voltage levels."

32.    It is my opinion that claim 1 of the '788 Patent is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the specification and prosecution history.  Specifically, the specification and claim, in light of the knowledge of a person of ordinary skill in the art, provides clear notice of the boundaries of the claim, including each of its claim limitations.

### A.    "Gamma reference control capability"

| Claim | Terms | Plaintiff's Proposed Construction |
|-------|-------|-----------------------------------|
| 1 | "Gamma reference control capability" | Not indefinite; plain and ordinary meaning |

33.    It is my opinion that "gamma reference control capability," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the specification and prosecution history. The claims, specification, and prosecution history of the '788 Patent provide a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes "gamma reference control capability."

34.    A person of ordinary skill in the art would understand that the term "gamma reference control" capability refers to the capability to control, modify, alter, or reprogram the gamma reference voltages of the system described in the '788 Patent. As a non-exclusive example, the '788 Patent describes a "gamma reference circuit" using "gamma reference controllers, 210 and 220, for a TFT panel 280." Dkt. 1-2 at 2:61-63.  Wherein "[t]he gamma reference controller 210 drives a first set of eight gamma reference voltages GM1-GM8 to the source drivers 240, 241,…and 242" and "gamma reference controller 220 drives a second set of eight gamma reference voltages GM9-GM16 to the source drivers 240, 241,…and 242."  *Id*. at 2:67-3:5. A person of ordinary skill in the art would, therefore, understand that claim 1's "display with gamma reference control capability" means that the display can control, alter, modify, reprogram, or otherwise change its gamma reference voltages of its gamma reference circuit (or gamma reference generator).

35.    The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "gamma reference control capability" claim term. *See e.g.*, Dkt. 1-2 at 2:17-28; 2:61-3:12; 3:24-30; 3:36-58; 5:28-47; 6:32-51; FIG 2; FIG 3; and FIG 6.

### B.    "control circuit"

| Claim | Terms | Plaintiff's Proposed Construction |
|---|---|---|
| 1 | "control circuit" | Not indefinite; plain and ordinary meaning |

36.    It is my opinion that "control circuit," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with

reasonable certainty when read in view of the specification and prosecution history. The claims, specification, and prosecution history of the '788 Patent provides a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes a "control circuit."

37.    A person of ordinary skill in the art would understand that the term "control circuit" refers to a circuit with the ability to control a particular variable.   Read in the context the '788 Patent's claim 1, "varying gamma reference voltage levels on columns of said display by a control circuit" indicates that the control circuit can control the gamma reference voltage levels on columns of the claim's display. A person of ordinary skill in the art would come to this logical conclusion based on the way the term is used in claim 1.

38.    The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "control circuit" claim term. *See e.g.*, Dkt. 1-2 at 2:17-28; 2:61-3:12; 5:28-35; Table 1; Table 2; FIG 2; FIG 3; and FIG 6.

C.    **"means for executing a predetermined algorithm"**

| Claim | Terms | Plaintiff's Proposed Construction |
|---|---|---|
| 1 | "means for executing a predetermined algorithm" | Not indefinite;<br>Function: executing a predetermined algorithm.<br><br>Structure: programming interface |

39.    It is my opinion that "means for executing a predetermined algorithm," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the specification and prosecution history. The specification, claims, and prosecution history of the '788 Patent provides

a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes a "means for executing a predetermined algorithm."

40.     I have been informed and understand that the term's use of "means for" provides a presumption that the term is a "means-plus-function" claim term. I further have been informed and understand that means-plus-function terms require identification of a claimed function and a structure for performing said claimed function.

41.     It is my opinion that a person of skill in the art would understand the scope of the "means for executing a predetermined algorithm" to include a function of executing a predetermined algorithm and a structure for performing said function which is the '788 Patent's programming interface.

42.     A person of ordinary skill in the art would derive the ascribed function from the claim term itself as a "means for *executing a predetermined algorithm*." Dkt. 1-2 at claim 1 (emphasis added). Reading the claims, specification, and prosecution history, a person of ordinary skill in the art would understand the '788 Patent's "programming interface" as the associated structure for executing a predetermined algorithm. As a non-exclusive example, the specification of the '788 Patent describes in detail the programming of the device via the "programming interface." *See id*. at 6:1-7:10. The specification further describes one exemplary embodiment of a programming interface, as the "programming interface 230" and identifies programming interface 230 in Figure 2. *See id*. at 2:61-3:30.

43.     The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "means for executing a predetermined algorithm" claim term. *See e.g.*, Dkt. 1-2 at Abstract; 2:17-29; 2:61-3:12; 6:1-14; 6:32-7:10; and FIG. 2.

### D.    "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm"

| Claim | Terms | Plaintiff's Proposed Construction |
|---|---|---|
| 1 | "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm" | Not indefinite; plain and ordinary meaning |

44.    It is my opinion that "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the claim language, the specification, and prosecution history. The specification, claims, and prosecution history of the '788 Patent provides a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes a "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm."

45.    A person of ordinary skill in the art would understand the scope of claim 1's term "means for executing a predetermined algorithm" with reasonable certainty, and provide clear notice of the boundaries of the claim, for the reasons set forth in section VI.C above, and incorporated by reference herein.

46.     It is my opinion that the claim terms additional language "according to a predetermined criteria and data sensed by said at least one sensor" is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the claim language, the specification, and the prosecution history.  As a non-exclusive example, the specification describes that "[o]nce the optical sensors have modulated gamma reference voltage levels for the columns to achieve the predetermined light matching for the display these values can be saved in the gamma reference circuitry."  Dkt. 1-2 at 7:1-5. For example, the specification further states that "[f]or the user, a sensor can be supplied with the display which responds to the temperature, lighting or other conditions present" wherein "[t]he output of the sensor can be matched to a predetermined application condition which selects the corresponding gamma value set." *Id*. at 7:6-10.  A person of ordinary skill in the art would read the specification's disclosures and the context of the claims and understand that the use of predetermined criteria such as temperature, lighting, or other desired conditions, sensed by the sensor could be used by the programming interface to execute a predetermined algorithm and adjust to the desired gamma reference voltage levels.

47.     The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "means for executing a predetermined algorithm according to a predetermined criteria and data sensed by said at least one sensor / means for executing said predetermined algorithm" claim term. *See e.g.*, Dkt. 1-2 at Abstract; 2:17-29; 2:61-3:12; 6:1-14; 6:52-7:10; and FIG. 2.

### E.     "predetermined algorithm"

| Claim | Terms | Plaintiff's Proposed Construction |
|-------|-------|-----------------------------------|

| 1 | "predetermined algorithm" | Not indefinite; plain and ordinary meaning |
|---|---|---|

48.    It is my opinion that "predetermined algorithm," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the specification and prosecution history. The specification, claims, and prosecution history of the '788 Patent provides a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes a "predetermined algorithm."

49.    A person of ordinary skill in the art would understand that a "predetermined algorithm" comprises a pre-set or pre-conceived order of steps to optimize or adjust the gamma reference voltage levels.   As a non-exclusive example, the specification of the '788 Patent describes one embodiment which includes "[d]isplay optimization algorithms may be located in such a PC which also may be connected to monitors feeding back data from the display during the optimization tuning at time of manufacture." Dkt. 1-2 at 6:60-64.

50.    The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "predetermined algorithm" claim term. *See e.g.*, Dkt. 1-2 at Abstract; 2:17-29; 2:61-3:12; 6:1-14; 6:52-7:10; and FIG. 2.

### F.    "optimizing said gamma reference voltage levels"

| Claim | Terms | Plaintiff's Proposed Construction |
|---|---|---|
| 1 | "optimizing said gamma reference voltage levels" | Not indefinite; plain and ordinary meaning |

51.     It is my opinion that "optimizing said gamma reference voltage levels," as used in claim 1 of the '788 Patent, is not indefinite because it informs a person of ordinary skill in the art of the scope of the claim with reasonable certainty when read in view of the specification and prosecution history. The specification, claims, and prosecution history of the '788 Patent provides a person of ordinary skill in the art clear notice of the boundaries of the claim, as it relates to what constitutes "optimizing said gamma reference voltage levels."

52.     A person of ordinary skill in the art would understand that "optimizing" the gamma reference voltage levels would comprise the adjusting, modifying, or changing of the gamma reference voltage levels to meet the desired output to the display.  As a non-exclusive example, the description of related art in the specification of the '788 Patent provides that "[e]ach display often has a different response to the gamma correction reference voltages, resulting in the need to generate specific gamma reference voltages for each model of display as well as compensating for display to display variation due to manufacturing process variations." Dkt. 1-2 at 1:24-29. A person or ordinary skill in the art would, therefore, understand that optimization of gamma reference voltage levels would be needed to adjust the desired output to the display to, at least in one example, account for the variations introduced in the manufacturing process.

53.     The specification and figures of the '788 Patent contain various descriptions to additional inform a person of ordinary skill in the art's understanding of the "optimizing said gamma reference voltage levels" claim term. *See e.g.*, Dkt. 1-2 at Abstract; 2:17-29; 2:61-3:12; 6:1-14; 6:52-7:10; Table 1; Table 2; and FIG. 2.

## VII.    RESERVATION OF RIGHTS

54.     I reserve the right to supplement, modify, or revise my opinions and constructions based on additional information that is provided to me in this litigation.

55.    In addition to this general reservation of rights, I specifically reserve the right to supplement, modify, or revise my opinions and constructions based on any arguments raised by defendants and their experts, including their arguments relating to allegations of indefiniteness.


I hereby declare that all statements of my knowledge made in this declaration are true and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.


Dated: <u>May 8, 2025</u>

Joseph McAlexander

# APPENDIX A

**CURRICULUM  VITAE**                                    **Joseph C. McAlexander III**

## PROFESSIONAL  SUMMARY

Currently a Registered Professional Engineer (#79454) and recognized as an inventor on 31 US and a number of foreign patents, I am President of McAlexander Sound, Inc., and the Managing Director of McAlexander Sound Pte Ltd.  I have focused my expertise to support a number of clients in product, process, and operations analysis and investigation.  Fifty-two years of experience in microcircuit and semiconductor technologies has developed my skills in areas of circuit design and analysis, device fabrication and assembly, testing, marketing, control system design and analysis, manufacturing operations and respective areas of quality, reliability, and defect / failure analysis.  I am also the President and CEO of MDFHoldings, Inc., an IP holding company currently engaged in the field of GPS Tracking, and was formerly, among others, a Manager with QM Partners, LP, supporting clients in IP management and licensing.  I have:

- designed and managed development, testing, and evaluation of devices including Dynamic Random Access Memories (DRAMs), Static Random Access Memories (SRAMs), Charge Coupled Devices (CCDs), Shift Registers (SRs), and functional circuits including I/O buffers for address and data, decoders, clocks, sense amplifiers, fault tolerant, parallel-to-serial data paths for video applications, level shifters, converters, pumps, and logic, as well as wireless communication systems and MEMs applications;

- designed, built, and managed 4 physical / chemical analysis laboratories to assess cause of defect and reliability of products, including nanostructure integrated circuits, systems, and product packaging;

- managed operations including engineering, training, and quality assurance for device fabrication, assembly, test, analysis, and reliability assessment, as well as manufacturing control, each of which involved both volatile and non-volatile memory; testing, analysis, and control involving use of mechanical calibration and measuring equipment, including optical, scanning e-beam, IR, capacitive, and laser using phase contrast and Fast Fourier Transform (FFT) for High Aspect Ratio Inspection (HARI) applications; audio and video system design and installation;

- taught courses in solid state device physics, integrated circuit design, integrated circuit fabrication, and statistical control;

- provided expert services, investigating both process and design technologies of various devices (microprocessor and controller, memory, programmable logic, card, tag, module, mixed signal, custom, and other), systems (PC and peripheral, computer, control, laser measurement, switch, architecture, software, and other), and consumer products (medical, TV, telephone, VCR, facsimile, copier, lighting, game, and other);

- provided nuclear radiation hardness testing services for military and space clients; and

**CURRICULUM  VITAE**                                    **Joseph C. McAlexander** [III]

## PROFESSIONAL  SUMMARY

- managed the design and installation of audio sound and video systems for private and commercial enterprises.

From 1986-1990, I was Executive Vice President of EPI Technologies, Inc., prior to joining the staff at Cochran Consulting, Inc. where I served as senior managing consultant from 1991-2002. From 1972 to 1986, I was employed by Texas Instruments Incorporated.

**CURRICULUM  VITAE**                                        **Joseph C. M<sup>c</sup>Alexander** <sup>III</sup>

## EXPERIENCE   PROFILE

1988-present          **McAlexander Sound, Inc. (M<sup>c</sup>ASI)** - Richardson, TX
                      **President**

                         o System, Product, and Process investigation, expert witness services for protection of intellectual property;
                         o Patent portfolio development and valuation;
                         o Product liability and insurance claim investigation, expert witness services for matters involving such claims;
                         o Quality Systems consulting and engineering;
                         o Radiation Hardness Testing Technical Representative;
                         o Acoustic system design/installation
                         o Technical Advisor in High Aspect Ratio and Surface Contour Measurement using Direct-to-Digital Holography.

2005-present          **McAlexander Sound Pte Ltd** - Singapore
                      **Managing Director**

    o System, Product, and Process investigation, expert witness services for protection of intellectual property;
    o Patent portfolio development and valuation;
    o Contract consultation;
    o Not assigned any patents and is not engaged in any IP related licensing or litigation activities.

2002-present          **MDFHoldings, Inc.** – Las Vegas, NV
                      **CEO**

    o IP holding and licensing company;
    o Assigned U.S. Patent Nos. 7,340,260 and 7,657,265 and EP 1 557 058 B1, each related to an object locating system;
    o Has not been and is not engaged in any IP related litigation or licensing activities.

2006-2020          **QM Partners, L.P.** – Texas
                   **Manager**

    o Management of development, licensing, prosecution and exploitation of assigned intellectual property;
    o Not assigned any patents and is not engaged in any IP related licensing or litigation activities.

CURRICULUM  VITAE                                   Joseph C. McAlexander III

**EXPERIENCE  PROFILE** (continued)

2006-2020              **Guardian Technologies, LLC** – Texas
                       **Manager**

          o IP holding and licensing company;
          o Litigated U.S. Patent No. 5,657,076 related to security surveillance 2009-2011 (patent expired 2015);
          o Assigned U.S. Patent No. 8,334,775 related to RFID tracking (reassigned 2020 to personal);
          o Not engaged in any IP related licensing or litigation activities.

2006-2020              **Appropriate Holdings, LLC** – Delaware
                       **Manager**

          o IP holding company;
          o Not assigned any patents, has not been and is not engaged in any IP related licensing or litigation activities.

1996-2010              **RMC Management, LLP** - Plano, TX
                       **Partner**

          o Asset management.

1991-2002              **Cochran Consulting, Inc. (CCI)** - Richardson, TX
                       **Managing Consultant**

          o System, Product, and Process investigation, expert witness services for protection of intellectual property;
          o Design, process, and product reliability;
          o Defect and failure analysis.

1986-Nov'90            **EPI Technologies, Inc.** - Richardson, TX
                       **Executive Vice President and Company Officer**

          o Managed Advanced Technology Div., QA, and Engineering, including software program development;
          o Developed strategic, space/energy market growth plans;
          o Negotiated the acquisition of and managed a radiation company;
          o Designed and managed physical analysis, radiation effects, and environmental stress laboratories, including optical and e-beam measurement;
          o Achieved > 30% annual revenue growth and profitability for each laboratory the first 12 months;

CURRICULUM  VITAE                                          Joseph C. McAlexander III

## EXPERIENCE   PROFILE (continued)

o Product and Process investigation services for protection of intellectual property.

1972 – 1986          **Texas Instruments, Inc.** - Dallas/Houston, TX; Singapore

'84 - '86          **Quality/Reliability Assurance Manager,** **TI Dallas** Advanced DRAM semiconductor wafer fabrication facility

o Developed/implemented on-line, computerized SPC software tools for dimensioning analysis and control and pattern recognition;
o Coordinated people development, design-of-experiments;
o Managed chemical and physical analysis laboratories;
o Implemented control systems to assure product, process, material, equipment, and facility compliance, including Cost of Quality analysis.

'82 - '84          **Quality/Reliability Assurance and Engineering Manager**, **TI Singapore** assembly/test facility

o Developed, implemented, and operated an effective Quality/Reliability Assurance program for assembly processing including optical pattern recognition for equipment registration;
o Supervised 225 people for 7 day/week operation, including QRA, Computer Systems software development, and Training;
o Trained engineers in Solid State Physics, device fabrication, and statistical process control.

'81 - '82          **Engineering Operations Manager**, **TI Houston**

o Managed DRAM memory product cost center;
o Responsible for division test software generation, product assembly and test quality / yield, cost reduction and quality improvement;
o Provided technical customer interface for marketing;
o Coordinated TI Singapore engineering test/assembly.

'79 - '81          **Product Engineering Manager**, **TI Houston**

o Responsible for yield improvement, technical customer interface, quality improvement, design evaluation, and device characterization for DRAM and CCD products;
o Developed device specifications and test software.

**CURRICULUM  VITAE**                                        **Joseph C. MᶜAlexander** **III**

**EXPERIENCE   PROFILE** (continued)

'72 - '79          **Design Section Manager / Engineer**, **TI Houston**

o Responsible for design and development, process compatibility, production introduction of Dynamic Ram products;
o Activities included electrical and physical layout, SPICE model simulation, test program generation, and product implementation for MOS Dynamic Ram products.

1969 - 1972       **U. S.  Army** - Coventry, Rhode Island; Seoul, Korea
**Captain, Air Defense Artillery**

o Served one year as Communications Officer in Korea;
o Served two years as Tactical Officer, New England Defense.

**CURRICULUM  VITAE**                                      **Joseph C. M<sup>c</sup>Alexander [III]**

---

<u>ORGANIZATIONS, PUBLICATIONS, EDUCATION</u>

## PROFESSIONAL ORGANIZATIONS AND AWARDS

1 - Institute of Electrical and Electronics Engineers, Inc. (IEEE), Senior Member.  Societies: Computer, Electron Devices, Solid State Circuits
2 - Licensing Executives Society (LES)
3 - National Society of Professional Engineers
4 - Texas Board of Professional Engineers, Registered License #79454
5 - American Society of Civil Engineers
6 - Architectural Engineering Institute
7 - 2000/2001 Nationwide Register's Who's Who in Executives and Businesses
8 - 1996/1997 Strathmore's Who's Who Registry of Business Leaders

## PUBLICATIONS

1- <u>NUS Proceedings of Engineering Convention '83</u>, Aug '83, pgs. 139-142, The Memory Challenge.

2- <u>Archives of Biochemistry and Biophysics</u>, Dec'81, Vol. 212, No. 2, Equilibrium Constants under Physiological Conditions for the Reactions of D-3-Phosphoglycerate Dehydrogenase and L-Phosphoserine Aminotransferase.

3- <u>International Electron Devices Meeting</u>, Dec '79, pgs. 355-357, Sub 100ns 16K x 1 MOS Dynamic RAM Using a Grounded Substrate.

## EDUCATION  PROFILE

| | |
|---|---|
| 1980 - 1985 | Taught Solid State Device Physics, Semiconductor Processing, Circuit Design Techniques, and Statistical Quality Control Methods |
| | Effectiveness Training and Japanese Manufacturing Techniques, Participative Problem Solving courses |
| 1975 - 1976 | 1.5 years Graduate Study in Neural Science, the University of Texas Graduate School of Biomedical Science |
| 1965 - 1969 | BSEE, North Carolina State University |

CURRICULUM  VITAE                                    Joseph C. M<sup>c</sup>Alexander III

### PATENTS (US-31, Foreign-8)

| | |
|---|---|
| 4,239,993 | (1980) High Performance Dynamic Sense Amplifier with Active Loads |
| 4,280,070 | (1981) Balanced Input Buffer Circuit for Semiconductor Memory |
| 4,288,706 | (1981) Noise Immunity in Input Buffer Circuit for Semiconductor Memory |
| 4,370,575 | (1983) High Performance Dynamic Sense Amplifier with Active Loads |
| 4,418,293 | (1983) High Performance Dynamic Sense Amplifier with Multiple Column Outputs |
| 4,533,843 | (1985) High Performance Dynamic Sense Amplifier with Voltage Boost for Row Address Lines |
| 4,543,500 | (1985) High Performance Dynamic Sense Amplifier Voltage Boost for Row Address Lines |
| 4,543,501 | (1985) High Performance Dynamic Sense Amplifier with Dual Channel Grounding Transistor |
| 4,748,349 | (1988) High Performance Dynamic Sense Amplifier with Voltage Boost for Row Address Lines |
| 6,172,640 B1 | (2001) Pet Locator |
| 6,236,358 B1 | (2001) Mobile Object Locator |
| 6,421,001 B1 | (2002) Object Locator |
| 6,441,778 B1 | (2002) Pet Locator |
| 6,480,147 B2 | (2002) Portable Position Determining Device |
| 6,518,919 B1 | (2003) Mobile Object Locator |
| 6,771,213 B2 | (2004) Object Locator |
| 6,859,171 B2 | (2005) Mobile Object Locator |

**CURRICULUM VITAE**                                      **Joseph C. McAlexander III**

**PATENTS** (continued)

| | |
|---|---|
| 7,113,126 B2 | (2006) Portable Positioning Determining Device |
| 7,179,674 B2 | (2007) Bi-Directional Released-Beam Sensor |
| 7,209,075 B2 | (2007) Mobile Object Locator |
| 7,324,044 B2 | (2008) Object Locator |
| 7,336,227 B2 | (2008) Portable Position Determining Device |
| 7,340,260 B2 | (2008) System and Method for Tracking the Location of Multiple Mobile Radio Transceiver Units (assigned to MDFHoldings, Inc.) |
| 7,353,706 B2 | (2008) Weighted Released-Beam Sensor |
| 7,397,097 B2 | (2008) Integrated Released Beam Layer Structure Fabricated in Trenches and Manufacturing Method Thereof |
| 7,564,405 B2 | (2009) Object Locator |
| 7,657,265 B2 | (2010) System and Method for Tracking the Location of Multiple Mobile Radio Transceiver Units (assigned to MDFHoldings, Inc.) |
| 7,760,137 B2 | (2010) Portable Positioning Determining Device |
| 7,764,228 B2 | (2010) Portable Positioning Determining Device |
| 7,989,906 B2 | (2011) Bi-Directional released-Beam Sensor |
| 8,334,775 B2 | (2012) RFID-Based Asset Security and Tracking System, Apparatus and Method (assigned to personal) |
| JP 55-053640 B4 | (1980) Defect Resistant Semiconductor Memory Cell |
| JP 59-044720 B4 | (1984) Semiconductor High Speed Read/Write Memory Unit |
| DE2935121 C2 | (1980) Clock Voltage Generator for Semiconductor Memory with Reduced Power Dissipation |
| DE3043651 A1 | (1981) Clock Voltage Generator for Semiconductor Memory with Reduced Power Dissipation |

**CURRICULUM  VITAE**                                    **Joseph C. McAlexander III**

**PATENTS** (continued)

GB2032211 B2          (1980) High Performance Dynamic MOS Read/Write Memory

EP 1 557 058 B1       (2011) System and method for tracking the location of multiple mobile radio transceiver units (assigned to MDFHoldings, Inc.) [States: AT BE BG CH CY CZ DE DK EE ES FI FR GB GR HU IE IT LI LU MC NL PT RO SE SI SK TR]

EP 1 676 809 B1       (2010) Weighted released-beam sensor [States:  DE FR GB IT]

EP 1 676 810 B1       (2010) Bi-directional released-beam sensor [States:  DE FR GB IT]

CURRICULUM  VITAE                                    Joseph C. McAlexander III

## CASES

Cases over at least the past 7 years, either active or closed, in which I have signed a Protective Order, have testified as an expert either at a trial, hearing, or deposition, or have submitted statements / opinions by declaration, affidavit, or report, are:

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Kangaroo Media* v. Immersion Entertainment (*firm: Kenyon & Kenyon) | 2:12-cv-00382-JFC, 2:14-cv-01536-JFC | WD PA | 2012 - 2016 | P,t |
| (Audio/Video Entertainment System patent) | | | | |
| Securus* v. Global (*firm: Gruber) | 3:13-CV-03009-K | ND TX | 2014 - 2017 | P,t |
| (Patents related to telecom systems) | | | | |
| Global v. Securus* (*firm: Gruber) | 3:14-CV-0829-K, 3:13-CV-00713-JRS | ND TX / ED VA | 2014 - 2017 | P |
| (Patents related to telecom systems) | | | | |
| Advanced Audio Devices* (*firm: Clark Hill PLC) | IPR2014-01155 | USPTO PTAB | 2014 - 2016 | P,t |
| (Patent 7,289,393 related to music jukebox) | | | | |
| Advanced Audio Devices* (*firm: Clark Hill PLC) | IPR2014-01156 | USPTO PTAB | 2014 - 2016 | P,t |
| (Patent 7,817,502 related to a personal digital stereo player) | | | | |
| Advanced Audio Devices* (*firm: Clark Hill PLC) | IPR2014-01157 | USPTO PTAB | 2014 - 2016 | P,t |
| (Patent 7,933,171 related to a personal digital stereo player) | | | | |
| Advanced Audio Devices* (*firm: Clark Hill PLC) | IPR2014-01158 | USPTO PTAB | 2014 – 2016 | P,t |
| (Patent 8,400,888 related to a personal digital stereo player) | | | | |

---

[1] *  = Client

[2] P=Patent,  C=Contract,  ©=Copyright,  TS=Trade Secret,  AT=Antitrust;  CA=Class Action; t=testified, TH=Trial/Hearing

**CURRICULUM VITAE**                    Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| One-E-Way* v. Sony, Sennheiser, BlueAnt, Creative Tech, Beats, Jawbone, Jabra (*firm: Knobbe Marten, Olson & Bear) | 337-TA-943 | ITC (Pender) | 2014 - 2018 | P,t |
| (Patents related to bluetooth configured headphones) | | | | |
| Omega* v. Calamp | 6:13-cv-1950-Orl-31DAB | MD, FL | 2015 - 2016 | P,t,TH |
| (Patents related to vehicular control systems and tracking) | | | | |
| AVM* v. Intel (*firm: Boies, Schiller & Flexner) | 1:15-cv-00033-RGA | DE | 2015 - 2016 | P,t,TH |
| (Patent related to dynamic logic circuits) | | | | |
| Allure Energy* v. Honeywell (*firm: McKool Smith) | 1:15-cv-00079-RP | WDTX, Austin | 2015 - 2017 | P |
| (Smart Thermostat) | | | | |
| IV* v. Toshiba (*firm: Desmarais) | 13-cv-453-SLR-SRF | DE | 2015 - 2017 | P,t,TH |
| (NAND Flash) | | | | |
| IMS v. Micron* (*Weil Gotchal/ Orrick) | 1:14-cv-01480-RGA | DE | 2015 - 2022 | P,t |
| (Patents related to flash memory) | | | | |
| Honeywell v. Allure* (*firm: Dickinson Wright) | IPR201501248, 01251,01253 | USPTO PTAB | 2015 - 2017 | P |
| (Smart Thermostat) | | | | |
| Blitzsafe* v Honda (*firm: Brown Rudnick) | 2:15-cv-01274-JRG-RSP | EDTX, Marshall | 2015 - 2017 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Hyundai (*firm: Brown Rudnick) | 2:15-cv-01275-JRG-RSP | EDTX, Marshall | 2015 - 2017 | P,t |
| (Patents related to audio device integration systems) | | | | |

CURRICULUM  VITAE                                       Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| Blitzsafe* v Nissan (*firm: Brown Rudnick) | 2:15-cv-01276-JRG-RSP | EDTX, Marshall | 2015 - 2017 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Toyota (*firm: Brown Rudnick) | 2:15-cv-01277-JRG-RSP | EDTX, Marshall | 2015 - 2017 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v VW (*firm: Brown Rudnick) | 2:15-cv-01278-JRG-RSP | EDTX, Marshall | 2015 - 2017 | P,t |
| (Patents related to audio device integration systems) | | | | |
| 3rd Eye Surveillance* v Stealth (*firm: Kennedy Law) | 6:14-cv-00162 JDL | EDTX, Tyler | 2015 - 2016 | P |
| (Patents related to real-time image processing to response agency) | | | | |
| 3rd Eye Surveillance* v Vision Video (*firm: Kennedy Law) | 6:14-cv-00161-JDL | EDTX, Tyler | 2015 - 2016 | P |
| (Patents related to real-time image processing to response agency) | | | | |
| 3rd Eye Surveillance* v Ft Worth / e-Watch (*firm: Kennedy Law) | 6:14-cv-00725 | EDTX, Tyler | 2015 - 2017 | P,t,TH |
| (Patents related to real-time image processing to response agency) | | | | |
| 3rd Eye Surveillance* v Uinted States (*firm: Kennedy Law) | 1:15-cv-00501-CFL | Court of Federal Claims, DC | 2015 - | P,t,TH |
| (Patents related to real-time image processing to response agency) | | | | |
| Hitachi v TPV* (*firm: O'Melveny & Myers) | 2:14-cv-1121-JRG-RSP | EDTX, Marshall | 2015 - 2016 | P |
| (Patent related to LCD power and signal board arrangement) | | | | |

CURRICULUM VITAE                                    Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| Nidec Motor v Broad Ocean Motor* (*firm: Locke Lord) | 2:15-cv-00443 | EDTX, Marshall | 2016 | P |
| (Patent related to blower motor control for HVAC) | | | | |
| TracBeam* v T-Mobile (*firm: Dovel & Luner) | 6:14-cv-678-RWS | EDTX, Tyler | 2016 | P,t |
| (Patents related to geographic location estimates) | | | | |
| SMS v Emerson* (*firm: Davidson Berquist) | 2:15-cv-00032-RWS-RSP | EDTX, Marshall | 2016 | P |
| (Patent related to a method of monitoring a protected space) | | | | |
| Prong v Sorias* (*firm: Gottlieb, Rackman & Reisman) | IPR2015-01317 | USPTO PTAB | 2016 | P |
| (Patent related to attachable mobile charger) | | | | |
| Skyline Software Systems v Duane Morris* (*firm: Venable) | 2015-08868 | Circuit Court Fairfax County | 2016 | P |
| (3D mapping technology) | | | | |
| SignalQuest v Oncque* (*firm: Duane Morris) | 11-cv-00392-JL | NH | 2016 | P |
| (Patents related to vibration switches) | | | | |
| TiVo v Samsung* (*firm: Fish & Richardson) | 2:15-CV-1503 | EDTX, Marshall | 2016 | P |
| (Patent related to multimedia signal processing) | | | | |
| Richtek v uPi* (*firm: Hogan Lovells) | C 09-05659 WHA LB | NDCA, SF | 2016 | P |
| (Patents related to converter channel current balance and PWM circuit) | | | | |
| Paice* v VW, Porsche, Audi (*firm: Fish & Richardson) | 337-TA-998 | ITC | 2016 – 2017 | P |
| (Patents related to hybid vehicle technology) | | | | |

**CURRICULUM VITAE**                                     Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| Biosonix v Hydrowave* (*firm: Bradley) | 4:16-cv-00139-RC | EDTX, Sherman | 2016 - 2017 | P |
| (Patent related to underwater sound listening and generation) | | | | |
| Univ of S FL* v Fujifilm (*firm: Dickinson Wright) | 8:16-cv-01194-MSS-TGW | MDFL, Tampa | 2017 | P |
| (Patent related to Workstation Interface – Digital Mammography) | | | | |
| Univ of S FL * v BRIT (*firm: Dickinson Wright) | 8:16-cv-03109-MSS-TGW | MDFL, Tampa | 2017 | P,t |
| (Patent related to Workstation Interface – Digital Mammography) | | | | |
| Nokia v Apple | 337-TA-1038 | ITC | 2017 | P |
| (Patent related to controllable bias mode oscillator) | | | | |
| Univ of IL v Micron* (*firm: Fish & Richardson) | 2:11-cv-02288-SLD-JAG | CDIL, Rock Falls | 2017 | P, C |
| (Patents and contract related to use of deuterium in semicondutor processing) | | | | |
| ZiiLabs v AMD* (*firm: O'Melveny & Myers) | 337-TA-1037 | ITC-Shaw | 2017 | P |
| (Patents related to graphics processors) | | | | |
| MTL* v Sandisk (*firm: Tensegrity) | 337-TA-1034 | ITC-Lord | 2017 | P,t |
| (Patents related to flash memory) | | | | |
| Razberi v Dynacolor* (*firm: McDole Williams) | 01-16-0003-3734 | AAA | 2017 - 2018 | C,TS,t, TH |
| (Arbitration related to contractual obligations) | | | | |
| Seed Spring* v Microsoft (*firm: Dovel) | 6:17-cv-427-RWS | EDTX, Tyler | 2017 | P |
| (Patents related to Wirelss Location) | | | | |
| TracBeam* v Microsoft (*firm: Dovel) | 6:17-cv-426-RWS | EDTX, Tyler | 2017 | P |
| (Patents related to Wirelss Location) | | | | |

CURRICULUM  VITAE                                    Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| TracBeam* v Cisco (*firm: Dovel) | 6:17-cv-525-RWS | EDTX, Tyler | 2017 - 2018 | P |
| (Patents related to Wirelss Location) | | | | |
| Arris* v Sony (*firm: Fish & Richardson) | 337-TA-1060 | ITC-Lord | 2017 | P,t |
| (Patent related to Broadcast Signals) | | | | |
| Vivint* v Alarm.com (*firm: Weil) | 2:15-cv-00392-CW-BCW | UT | 2017 - 2023 | P,t |
| (Patents related to Electronic Message Delivery) | | | | |
| Blitzsafe* v Bosch (*firm: Brown Rudnick) | 2:17-cv-00105-JRG | EDTX, Marshall | 2017 - 2019 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Daimler & Mercedes (*firm: Brown Rudnick) | 2:17-cv-00422-JRG | EDTX, Marshall | 2017 – 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v BMW (*firm: Brown Rudnick) | 2:17-cv-00418-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Mazda (*firm: Brown Rudnick) | 2:17-cv-00423-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Mitsubishi (*firm: Brown Rudnick) | 2:17-cv-00430-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Subaru (*firm: Brown Rudnick) | 2:17-cv-00421-JRG | EDTX, Marshall | 2017 - 2019 | P,t |
| (Patents related to audio device integration systems) | | | | |

**CURRICULUM  VITAE**                                    Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Blitzsafe* v Tata & Jaguar (*firm: Brown Rudnick) | 2:17-cv-00424-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v Volvo (*firm: Brown Rudnick) | 2:17-cv-00420-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to audio device integration systems) | | | | |
| AGIS* v Huawei (*firm: Brown Rudnick) | 2:17-00513-JRG | EDTX, Marshall | 2017 - 2018 | P,t |
| (Patents related to Patents related to interactive remote communications) | | | | |
| AGIS* v HTC (*firm: Brown Rudnick) | 2:17-00514-JRG | EDTX, Marshall | 2017 - 2019 | P,t |
| (Patents related to Patents related to interactive remote communications) | | | | |
| AGIS* v LG (*firm: Brown Rudnick) | 2:17-00515-JRG | EDTX, Marshall | 2017 - 2019 | P,t |
| (Patents related to Patents related to interactive remote communications) | | | | |
| AGIS* v Apple (*firm: Brown Rudnick) | 2:17-00516-JRG | EDTX, Marshall | 2017 - 2019 | P,t |
| (Patents related to Patents related to interactive remote communications) | | | | |
| AGIS* v ZTE (*firm: Brown Rudnick) | 2:17-00517-JRG | EDTX, Marshall | 2017 - 2019 | P |
| (Patents related to Patents related to interactive remote communications) | | | | |
| Arya v Dufossat* (*firm: Robert Sueiro) | 4:16-cv-03595 | SDYX, Houston | 2017 - | TS,C,t |
| (Dispute related to Trade Secrets) | | | | |
| Seven Networks v Samsung* (*firm: Fish & Richardson) | 2:17-cv-00441-JRG | EDTX, Marshall | 2017 - 2018 | P,t |
| (Patents related to Power Management of Mobile Networks) | | | | |

CURRICULUM VITAE                                         Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| ZF Micro Solutions* v. Tat Investment (*firm: Berger) | 1-09-CV-134970 | Santa Clara County | 2018 | C,t,TH |
| (Business tort, unfair practice) | | | | |
| Univ of S FL* v Fujifilm (*firm: Dickinson Wright) | 3:18-cv-00215-AVC | Connecticut | 2018 | P,t |
| (Patent related to Workstation Interface – Digital Mammography) | | | | |
| Univ of S FL* v BRIT (*firm: Dickinson Wright) | 3:18-CV-0250-K | NDTX, Dallas | 2018 - 2019 | P,t |
| (Patent related to Workstation Interface – Digital Mammography) | | | | |
| Cypress Insurance v Hynix* (*firm: Bird Marella) | C17-467 RAJ | WDWA, Seattle | 2018 - 2019 | C,t,TH |
| (Contract dispute related to product delivery) | | | | |
| Belliveau* v BARCO (*firm: McKool) | 1:17-CV-00379-SS | WDTX, Austin | 2018 | C,t |
| (Patent portfolio liceinsing dispute) | | | | |
| MPS* v Intersil (*firm: Perkins | 16-1125-LPS | DE | 2018 - 2021 | TS,t |
| (Trade Secret dispute) | | | | |
| GoGo v Squire Patton Boggs* (*firm: Cozen O'Connor) | 2016-L-007789 | Cook County, IL | 2018 - 2019 | P |
| (Patent Malpractice claim) | | | | |
| X2Y* v Intel (*firm: Dovel) | 3:18-cv-1394-HZ | DOR, Portland | 2018 - 2020 | P |
| (Patents related to package layer metalization) | | | | |
| Power Integration* v ON Semi (*firm: Fish & Richardson) | 5:16-cv-06371-BLF | NDCA, San Jose | 2019 | P,t |
| (Patents related to power converter regulation) | | | | |

CURRICULUM VITAE                                        Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| ON Semi v Power Integration* (*firm: Fish & Richardson) | 1:17-cv-00247-LPS-CJB | DE | 2019 | P,t |
| (Patents related to power converter regulation) | | | | |
| Semcon* v Amazon (*firm: Brown Rudnick) | 2:18-CV-00192-JRG | EDTX, Marshall | 2019 | P |
| (Patent related to Adaptive Power Control) | | | | |
| Semcon* v Asustek (*firm: Brown Rudnick) | 2:18-CV-00193-JRG | EDTX, Marshall | 2019 | P |
| (Patent related to adaptive power control) | | | | |
| Semcon* v Kyocera (*firm: Brown Rudnick) | 2:18-CV-00197-JRG | EDTX, Marshall | 2019 | P |
| (Patent related to adaptive power control) | | | | |
| Innovation Sciences* v Amazon (*firm: Davidson Berquist) | 4:18-cv-00474-ALM | EDTX, Sherman | 2019 - 2020 | P,t,TH |
| (Patent related to Internet communication) | | | | |
| Innovation Sciences* v HTC (*firm: Davidson Berquist) | 4:18-cv-00476-ALM | EDTX, Sherman | 2019 - 2020 | P,t |
| (Patent related to Internet communication) | | | | |
| Innovation Sciences* v Resideo (*firm: Davidson Berquist) | 4:18-cv-00475-ALM | EDTX, Sherman | 2019 - 2020 | P,t |
| (Patent related to Internet communication) | | | | |
| Innovation Sciences* v Vector (*firm: Davidson Berquist) | 4:18-cv-00477-ALM | EDTX, Sherman | 2019 | P |
| (Patent related to Internet communication) | | | | |

CURRICULUM  VITAE                                    Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| CXT* v JC Penny (*firm: Brown Rudnick) | 2:18-cv-00171-RWS-RSP (lead)<br><br>2:18-CV-233-RWS-RSP | EDTX, Marshall | 2019 - 2020 | P,t |
| (Patents related to storage management and information distribution) | | | | |
| Photonics* v Lenovo (*firm: Brown Rudnick) | 1:18-cv-00489-MN | DE | 2019 | P |
| (Patents related to GDS-II Layout) | | | | |
| Quest NetTech Corp* v Apple (*firm: Brown Rudnick) | 2:19-CV-00118-JRG | EDTX, Marshall | 2019 - 2020 | P |
| (Patent related to programmable credit card system) | | | | |
| Pilot, Inc.* v Schumacher (*firm: Bradford) | 1:19-cv-05982-EEC | NDIL, Eastern Div | 2019 - 2921 | P |
| (Patents related to battery chargers) | | | | |
| Vocalife* v Amazon (*firm: Brown Rudnick) | 2:19-cv-00123-JRG | EDTX, Marshall | 2019 - 2020 | P,t,TH |
| (Patent related to microphone array) | | | | |
| Semcon* v Vuitton (*firm: Brown Rudnick) | 2:19-CV-00122-JRG | EDTX, Marshall | 2019 | P,t |
| (Patent related to adaptive power control) | | | | |
| Semcon* v Shenzhen (*firm: Brown Rudnick) | 2:18-CV-00196-JRG | EDTX, Marshall | 2019 | P,t |
| (Patent related to adaptive power control) | | | | |
| Ultravision* v GoVision (*firm: Brown Rudnick) | 2:18-cv-00100-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v Shenzhen (*firm: Brown Rudnick) | 2:18-cv-00103-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |

**CURRICULUM VITAE**                    **Joseph C. McAlexander III**

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Ultravision* v Aoto (*firm: Brown Rudnick) | 2:18-cv-00113-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v Leyard (*firm: Brown Rudnick) | 2:18-cv-00102-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v NEC (*firm: Brown Rudnick) | 2:18-cv-00150-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to Modular Display Panels and LED lighting) | | | | |
| Ultravision* v Prismaflex (*firm: Brown Rudnick) | 2:18-cv-00108-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v Unilumin (*firm: Brown Rudnick) | 2:18-cv-00116-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v Yaham (*firm: Brown Rudnick) | 2:18-cv-00118-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Ultravision* v Absen (*firm: Brown Rudnick) | 2:18-cv-00112-JRG-RSP | EDTX, Marshall | 2019 | P |
| (Patents related to modular display panels and LED lighting) | | | | |
| Birchett* v City of Fort Worth (*firm: Kennedy Law) | DC-19-06941 | Dallas County | 2019 | C,t |
| (Whistleblower) | | | | |
| Innovation Sciences* v HTC (*firm: Davidson Berquist) | 337-TA-1180 | ITC | 2020 - 2021 | P,t |
| (Patent related to wireless communication) | | | | |

CURRICULUM  VITAE                                    Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Innovation Sciences* v Resideo (*firm: Davidson Berquist) | 337-TA-1180 | ITC | 2020 | P,t |
| (Patent related to Internet communication) | | | | |
| CXT* v Neiman Marcus (*firm: Brown Rudnick) | 2:19-cv-00270-RWS-RSP | EDTX, Marshall | 2020 | P |
| (Patents related to storage management and information distribution) | | | | |
| CXT* v General Nutrition (*firm: Brown Rudnick) | 2:19-cv-00271-RWS-RSP | EDTX, Marshall | 2020 | P |
| (Patents related to storage management and information distribution) | | | | |
| CXT* v Steven Madden (*firm: Brown Rudnick) | 2:19-cv-00272-RWS-RSP | EDTX, Marshall | 2020 | P |
| (Patents related to storage management and information distribution) | | | | |
| Consolidated* v Amazon (*firm: Devlin Law) | 1:19-cv-01715-RGA | DE | 2020 – 2021 | P,t |
| (Patents related to on-line shopping) | | | | |
| Consolidated* v Ford (*firm: Devlin Law) | 1:19-cv-01916-RGA | DE | 2020 - 2021 | P,t |
| (Patents related to on-line shopping) | | | | |
| Consolidated* v JC Penney (*firm: Devlin Law) | 1:19-cv-01918-RGA | DE | 2020 - 2021 | P,t |
| (Patents related to on-line shopping) | | | | |
| Consolidated* v Ebay (*firm: Devlin Law) | 1:19-cv-01580-RGA | DE | 2020 - 2021 | P,t |
| (Patents related to on-line shopping) | | | | |
| Consolidated* v Walmart (*firm: Devlin Law) | 1:19-cv-01581-RGA | DE | 2020 - 2021 | P,t |
| (Patents related to on-line shopping) | | | | |

CURRICULUM  VITAE                                   Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| Semcon* v TCT Mobile (*firm: Brown Rudnick) | 2:18-CV-00194-JRG | EDTX, Marshall | 2020 | P |
| (Patent related to adaptive power control) | | | | |
| BNR v Samsung* (*firm: Fish & Richardson) | 2:19-cv-00286-JRG | EDTX, Marshall | 2020 | P |
| (Patents related to portable communication devices) | | | | |
| AGIS* v Google (*firm: BRudnick, Fabricant) | 2:19-cv-00361-JRG | EDTX, Marshall | 2020 - 2022 | P,t |
| (Patents related to interactive remote communications) | | | | |
| AGIS* v Waze (*firm: BRudnick, Fabricant) | 2:19-cv-00359-JRG | EDTX, Marshall | 2020 - 2022 | P,t |
| (Patents related to interactive remote communications) | | | | |
| Burke* v City of Fort Worth (*firm: Kennedy Law) | DC-19-07239 | Dallas County | 2020 | C,t |
| (Whistleblower) | | | | |
| Infinera v Oyster Optics* (*firm: Davidson Berquist) | IPR2020-00325 | PTAB | 2020 | P,t |
| (Patent related to fiber optic telecommunications) | | | | |
| Blitzsafe* v GM (*firm: Fabricant) | 2:19-cv-00377-JRG | EDTX, Marshall | 2020 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Blitzsafe* v FCA (*firm: Fabricant) | 2:19-cv-00378-JRG | EDTX, Marshall | 2020 | P,t |
| (Patents related to audio device integration systems) | | | | |
| Kuster v Western Digital* (*firm: Shearman & Sterling) | 6:20-cv-00563 | WDTX, Waco | 2020 | P,t |
| (Patent related to memory stack storage) | | | | |

**CURRICULUM VITAE**                                    **Joseph C. M<sup>c</sup>Alexander III**

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| TruSun* v Eaton (*firm: Duane Morris) | 6:19-cv-00656-ADA | WDTX, Waco | 2020 - 2022 | P,t |
| (Patent related to a light-generating system) | | | | |
| RJR v PMI* (*firm: Latham Watkins) | 1:20-cv-00393-LO-TCB | EDVA, Alexandria | 2020 - 2022 | P,t,TH |
| (Patents related to e-cigarette controls) | | | | |
| Koss* v Apple et al (*firm: K L Gates) | 6:20-cv-00665 | WDTX, Waco | 2020 - 2022 | P,t |
| (Patents related to Wireless Headphones) | | | | |
| Koss* v Bose (*firm: K L Gates) | 6:20-cv-00661 | WDTX, Waco | 2020 | P |
| (Patents related to Wireless Headphones) | | | | |
| Ipcom v Sprint et al (Nokia*) (*Alston Bird) | 2:20-cv-321 | EDTX, Marshall | 2020 - 2022 | P |
| (Patents related to CDMA communication) | | | | |
| Ipcom v Verizon et al (Nokia*) (*Alston Bird) | 2:20-cv-323 | EDTX, Marshall | 2020 - 2022 | P |
| (Patents related to CDMA communication) | | | | |
| Pilot* v CarKu (*firm: Bradford / Sheridan) | 7131799991 | Amazon Arbitration | 2020 | P,t |
| (Patent related to jump starters) | | | | |
| MPS* v Meraki (*firm: Perkins Coie) | 6:2020cv00876-ADA | WDTX, Waco | 2020 - 2022 | P,TS,C |
| (Patents related to synchronous rectifier control) | | | | |
| AGIS* v Uber (*firm: Fabricant) | 2:21-cv-00026-JRG-RSP) | EDTX, Marshall | 2021 | P |
| (Patents related to interactive remote communications) | | | | |

CURRICULUM VITAE                                      Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| AGIS* v WhatsApp (*firm: Fabricant) | 2:21-cv-00029-JRG-RSP) | EDTX, Marshall | 2021 | P |
| (Patents related to interactive remote communications) | | | | |
| One E-Way* v Apple (*firm: Knobbe Martin) | 2:20-cv-06339-JSK-PD | CDCA | 2021 - 2023 | P,t |
| (Patent related to Bluetooth Headphones) | | | | |
| BMW v Omega Patents* (*firm: Allen Dyer) | IPR2021-00181 | PTAB | 2021 - | P,t |
| (Patent related to remote start) | | | | |
| Pilot* v The NOCO Co (*firm: Bradford / Sheridan) | 2:20-cv-01452-SRB | AZ | 2021 - 2023 | P,t |
| (Patents related to auto chargers) | | | | |
| Express Mobile* v Atlassian (*firm: Mololamken) | 6:20-cv-00805-ADA | WDTX, Austin | 2021 | P |
| (Patents related to browser-based web site generation) | | | | |
| AGIS* v Lyft (*firm: Fabricant) | 2:21-cv-00024-JRG-RSP | EDTX, Marshall NDCA | 2021 - 2022 | P |
| (Patents related to interactive remote communications) | | | | |
| AGIS* v T-Mobile (*firm: Fabricant) | 2:21-cv-00072-JRG-RSP | EDTX, Marshall | 2021 | P |
| (Patents related to interactive remote communications) | | | | |
| Altria* v RJR (*firm: Weil Gotshal) | 1:20-cv-00472 | MDNC | 2021 - 2022 | P,t,TH |
| (Patents related to e-cig) | | | | |
| One E-Way* v Apple (*firm: Knobbe Martin) | IPR2021-00283 IPR2021-00286 | PTAB | 2021 - 2022 | P,t |
| (Patent related to Bluetooth Headphones) | | | | |

**CURRICULUM  VITAE**                    Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Altria* v RJR (*firm: Weil Gotshal) | IPR2021-00650 IPR2021-00652 IPR2021-00725 IPR2021-00744 IPR2021-00745 IPR2021-00746 IPR2021-00747 IPR2021-00793 | PTAB | 2021 - 2022 | P,t,TH |
| (Patents related to e-cig control) | | | | |
| Kiwi Connection* v Anker (*firm: Bradford) | 8519300821 | Amazon Arbitration | 2021 | P,t |
| (Patent related to bidirectional connector) | | | | |
| Kiwi Connection* v JBL (*firm: Bradford) | 8674855301 | Amazon Arbitration | 2021 | P,t |
| (Patent related to bidirectional connector) | | | | |
| Platform Science v Omnitracs* (*firm: Kirkland & Ellis) | IPR2020-0187 IPR2020-1517 IPR2020-1518 | PTAB | 2021 – 2022 | P,t |
| (Patent related to critical event reporting) | | | | |
| Netlist v Samsung* (*firm: Bird Marella) | 8:20-cv-993-MCS | CDCA, Southern | 2021 | C,t |
| (Contract dispute) | | | | |
| Monterey Research* v (*firm: Desmarais) | IPR 2021-00119 IPR 2021-00120 IPR 2021-00172 | PTAB | 2021 - 2022 | P,t |
| (Patents related to semiconductor processing) | | | | |
| Apple / Bose v Koss* (*firm: K L Gates) | IPR2021-00255 IPR2021-00297 IPR2021-00305 IPR2021-00381 IPR2021-00592 | PTAB | 2021 - 2022 | P,t |
| (Patents related to Wireless Headphones) | | | | |

**CURRICULUM VITAE**                          **Joseph C. McAlexander III**

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Vocalife* v Amazon2 (*firm: Fabricant) | 2 :20-cv-00401-JRG-RSP | EDTX, Marshall | 2021 - 2023 | P,t |
| (Patent related to microphone array) | | | | |
| Vocalife* v Google (*firm: Fabricant) | 2 :21-cv-00124-JRG-RSP | EDTX, Marshall | 2021 - 2023 | P,t |
| (Patent related to microphone array) | | | | |
| Luxshare* v Amphenol (*firm: K L Gates) | IPR2022-00132 | PTAB | 2021 - 2022 | P,t |
| (Patent related to high performance connector) | | | | |
| Vervain v Micron* (*firm: Orrick) | 6:20-cv-487-ADA | WDTX, Waco | 2021 - 2023 | P,t |
| (Patents related to MLC & SLC endurance) | | | | |
| Express Mobile* v Dropbox (*firm: Mololamken) | 3:21-cv-01145 | NDCA | 2021 | P |
| (Patents related to browser-based web site generation) | | | | |
| Lexmark v Universal Imaging* (*firm: Allen Dyer) | 8:18-cv-1047-T-17AEP | MDFL, Tampa | 2021 - 2023 | P |
| (Patents related to printer cartridge authentication) | | | | |
| Pilot* v The NOCO Co (*firm: Bradford / Sheridan) | IPR2021-00777 IPR2021-01232 IPR2023-00167 IPR2023-00810 | PTAB | 2021 | P,t |
| (Patents related to auto chargers) | | | | |
| Delta T* v MacroAir (*firm: Latham/VedderPrice) | 5:20-cv-00728-GW-GJS | CDCA, LA | 2022 - 2023 | P |
| (Patents related to fan sensors and control) | | | | |
| MPS* v Dong & Sheng (*firm: Perkins Coie) | 4 :20-cv-6752-JSW | NCCA, Oakland | 2022 - 2023 | P, TS |
| (Patents related to synchronous rectifier control) | | | | |

**CURRICULUM  VITAE**                               Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Vocalife* v Sonos (*firm: Fabricant) | 2 :21-cv-00129-JRG | EDTX, Marshall | 2022 | P,t |
| (Patent related to microphone array) | | | | |
| Vocalife* v Bose (*firm: Fabricant) | 2 :21-cv-00128-JRG | EDTX, Marshall | 2022 | P,t |
| (Patent related to microphone array) | | | | |
| Enovsys* v T-Mobile (*firm: Eichmann) | 2:21-cv-00368-JRG | EDTX, Marshall | 2022 | P,t |
| (Patents related to precise location determination and secure disclosure) | | | | |
| Enovsys* v Verizon (*firm: Eichmann) | 2:21-cv-00315-JRG-RSP | EDTX, Marshall | 2022 | P,t |
| (Patents related to precise location determination and secure disclosure) | | | | |
| Lyft v AGIS* (*firm: Fabricant) | 5 :21-cv-04653-BLF | NDCA, San Jose | 2022 - 2023 | P |
| (Patents related to interactive remote communications) | | | | |
| Vocalife* v Amazon (*firm: Fabricant) | IPR2021-01331 | PTAB | 2022 | P,t |
| (Patent related to microphone array) | | | | |
| MPS* v Meraki (*firm: Perkins Coie) | 4:22-cv-01986-JSW | NDCA, Oakland | 2022 - 2023 | P,TS,C |
| (Patents related to synchronous rectifier control) | | | | |
| Signode v Polychem* (*firm: Latham) | 1 :22-cv-00519-UNA | DE | 2022 | P |
| (Patents related to a strapping apparatus) | | | | |
| Pilot* v Hulkman (*firm: BRADFORD) | 10427111251 | Amazon Arbitration | 2022 | P,t |
| (Patent related to jump starters) | | | | |

CURRICULUM  VITAE                          Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| Netlist v Samsung* (*firm: Fish & Richardson) | 2:21-cv-463 | EDTX, Marshall | 2022 - 2024 | P,t,TH |
| (Patents related to DIMM DDR3 signal timing, power management, and rank multiplication) | | | | |
| Orange* v Autel (*firm: Sughrue Mion) | 2 :21-cv-240 | EDTX, Marshall | 2022 - 2023 | P,t,TH |
| (Patent related to Tire Pressure Monitoring Systems) | | | | |
| Bell Power v MPS* (*firm: Perkins Coie) | 6 :21-cv-00655-ADA | WDTX, Waco | 2022 - | P |
| (Patents related to power converter/regulator control) | | | | |
| VPR v Jupiter* (*firm: Noroozi PC) | 2:20-CV-02185-DJH | AZ | 2023 - | P,t |
| (Patent related to electronic vape device with air flow sensor) | | | | |
| Multimodal* v Guangdong (*firm: Fabricant) | 2:21-cv-00436-JRG-RSP | EDTX, Marshall | 2023 | P |
| (Patents related to communication over a network, call completion) | | | | |
| Multimodal v ZTE (*firm: Fabricant) | 2:21-cv-00437-JRG-RSP | EDTX, Marshall | 2023 | P |
| (Patents related to communication over a network, call completion) | | | | |
| Entropic* v Charter Communications et al. (*firm: K L Gates) | 2 :22-cv-00125-JRG | EDTX, Marshall | 2022 | P |
| (Patents related to modems and broadband content distribution) | | | | |
| Oasis Tooling* v Global Foundries U.S. (*firm: Kramer Levin) | 22-00312-CJB | DE | 2022 - 2024 | P,t |
| (Patents related to chip design process workflow) | | | | |
| Oasis Tooling* v Siemens Industry Software (*firm: Kramer Levin) | 22-00151-CJB | DE | 2022 - 2024 | P,t |
| (Patents related to chip design process workflow) | | | | |

**CURRICULUM VITAE**                                      Joseph C. McAlexander III

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| AGIS* ITC (*firm: Fabricant) | 337-TA-1347 | ITC | 2023 | P |
| (Patents related to Location-Sharing Systems) | | | | |
| Monterey* v Nanya (*firm: Desmarais) | 19-2090-NIQA-LAS | DE | 2023 – 2024 | P |
| (Patents directed to semiconductor technology) | | | | |
| Geotab v Omega* (*firm: Allen Dyer) | IPR2023-00504 | PTAB | 2023 | P,t |
| (Patent related to multi-vehicle communication) | | | | |
| Adv Lighting Concepts* v mate (*firm: Munsch) | IPR2023-01264 | PTAB | 2023 | P |
| (Patent related to LED drivers) | | | | |
| SitePro* v Waterbridge (*firm: Perkins Coie) | 6:23-cv-00115-ADA-DTG | WDTX, Waco | 2023 | P,TS,C |
| (Patents and Trade Secrets related to remote delivery control) | | | | |
| Nanya v Monterey* (*firm: Botos Churchill) | EPR 6,825,526C1 EPR 6,680,516 | USPTO | 2023 | P,t |
| (Patents directed to semiconductor technology) | | | | |
| ICPillar* v ARM (*firm: Eichmann) | 6_23-cv-00115-ADA-DTG | WDTX, Austin | 2023 - 2024 | P |
| (Patents related to computer method for IC design) | | | | |
| GoTV Streaming v Netflix* (*firm: Wilkie Farr) | EPR 8478245 EPR 8989715 | USPTO | 2023 | P,t |
| (Patent related to rendering content on a wireless device) | | | | |
| Greenthread v MPS* (*firm: Perkins Coie) | 23-579-RGA | DE | 2024 | P |
| (Patents related to semiconductor structure with graded doping) | | | | |

**CURRICULUM  VITAE**                    Joseph C. M<sup>c</sup>Alexander [III]

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| MPS* v REED (*firm: Perkins Coie) | 23-1155-JFM | DE | 2023 - | P,t |
| (Patent related to bootstrap refresh control) | | | | |
| Verizon v Omega* (*firm: Allen Dyer) | IPR2023--01162 | PTAB | 2023 - | P,t |
| (Patent related to multi-vehicle communication) | | | | |
| MOSAID v MediaTek* (*firm: Fish & Richardson | 2:23-cv-00129-JRG-RSP | EDTX, Marshall | 2023 - 2024 | P |
| (Patents related to IC Power Management) | | | | |
| GoTV Streaming v Netflix* (*firm: Wilkie Farr) | 2 :22-cv-07556-RGK-SHK | CDCA | 2023 | P |
| (Patent related to rendering content on a wireless device) | | | | |
| Lifetime* v Qima (*firm: Fabricant) | 2:23-cv-00216-JRG | EDTX, Marshall | 2024 | P,t |
| (Patents related to Quality Management) | | | | |
| Stellar* v Motorola Solutions (*firm: Devlin) | 4:23-cv-00750-SDJ | EDTX, Sherman | 2024 - | P |
| (Patents related to write protect recording) | | | | |
| Enovsys* v Lyft (*firm: Seth Law) | 23-cv-05157-EJD | NDCA, San Jose | 2024 | P |
| (Patents related to mobile unit tracking) | | | | |
| ARM v ICPillar* (*firm: Lowenstein) | IPR2024-00476 IPR2024-00566 | PTAB | 2024 | P,t |
| (Patents related to computer method for IC design) | | | | |
| Maxell v TCL* (*firm: King & Spalding) | 5:23-CV-00108-RWS-JBB | EDTX, Texarkana | 2024 - | P,t |
| (Patents related to image display apparatus) | | | | |
| Enovsys* v Uber (*firm: Seth Law) | 23-cv-04549-EJD | NDCA, San Jose | 2024 | P |
| (Patents related to mobile unit tracking) | | | | |

**CURRICULUM VITAE**                                    **Joseph C. McAlexander III**

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---------|-------------|----------|------|---------|
| Uber v Enovsys* (*firm: Seth Law) | IPR2024-00825 IPR2024-00826 IPR2024-00827 | PTAB | 2024 - | P,t |
| (Patents related to mobile unit tracking) | | | | |
| JUUL v NJOY* (*firm: Weil Gotshal) | 337-TA-1368 IPR2024-00231 | ITC PTAB | 2024 | P,t,TH |
| (Patent related to vaping devices) | | | | |
| RJR v Guangdong et al.* (*firm: Mei & Mark) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v Kangvape* (*firm: Fish & Richardson) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v Breeze et al.* (*firm: Goodwin Procter) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v Pastel et al.* (*firm: Keller Heckman) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v Shenzhen Yanyang et al.* (*firm: Rimon) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v Maduro* (*firm: Thompson Hine) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| RJR v TheSy* (*firm: Thompson Hine) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |

**CURRICULUM  VITAE**                              **Joseph C. M<sup>c</sup>Alexander [III]**

**Cases** (continued)

| CASE[1] | CASE NUMBER | LOCATION | YEAR | TYPE[2] |
|---|---|---|---|---|
| RJR v SV3* (*firm: Sterne Kessler) | 337-TA-1410 | ITC | 2024 - | P,t |
| (Patent related to vaping devices) | | | | |
| REED v MPS* (*firm: Perkins Coie) | IPR2024-00871 | PTAB | 2024 - | P,t |
| (Patent related to bootstrap refresh control) | | | | |
| Phenix* v AU Optronics (*firm: Womble Bond) | 2:23-cv-00477-RWS-RSP | EDTX, Marshall | 2024 - | P |
| (Patents related to Gamma reference generation) | | | | |
| Phenix* v Innolux (*firm: Womble Bond) | 2:23-cv-00478-RWS-RSP | EDTX, Marshall | 2024 - | P |
| (Patents related to Gamma reference generation) | | | | |

**CURRICULUM  VITAE**                                   Joseph C. M<sup>c</sup>Alexander <sup>III</sup>

**Cases** (continued)

I have worked with other clients in various areas of my expertise, including "system, product, and process investigation," "patent valuation," "product liability and insurance claim investigation," "quality systems consulting and engineering," and "IP licensing."  This work generally relates to patents and/or trade secrets and may involve analysis of products either defensively or offensively. In no case does any of the work involve design of circuits, processes, packaging, software, or systems.

Non-confidentially, I have represented a radiation effects testing company, ICS Radiation Technology.  Further, I have worked with investment companies, such as Hatcreek Partners, reviewing potential investment opportunities, and have participated as a technical advisor to nLine Corporation, a company that developed a product for semiconductor wafer inspection using holographic High Aspect Ratio Inspection (HARI) technology.  Work associated with each of these matters occurred more than 10 years ago.

 These and other non-confidentially related companies are:

>  The Aspire International Foundation (2019-present)
>  - Partner;
>  - Rediscovering and redefining identity and purpose through experiential equine learning programs;
>  - Not assigned any patents and not engaged in any IP related activities.
>
>  Casualty Consulting Group of America (2013-present)
>  - Partner;
>  - Assessment of structural damage caused by extreme weather events;
>  - Not assigned any patents and not engaged in any IP related activities.
>
>  VCSY (2013-2020)
>  - Advisory board Member;
>  - Technology related to encrypted communication.
>
>  Bethel Cannon Group / Bethel Cannon Holdings (2011-present)
>  - Partner;
>  - Counseling / Event / Retreat Center / Hunting Lodge;
>  - Not assigned any patents and not engaged in any IP related activities.
>
>  Spirit Song Youth Equestrian Academy / Spirit Song Holdings (2011-present)
>  - CEO;
>  - Equine Assisted Learning Program for abused / traumatized youth, families, corporations, and churches;
>  - Not assigned any patents and not engaged in any IP related activities.

**CURRICULUM VITAE**                                      **Joseph C. M<sup>c</sup>Alexander III**

**Cases** (continued)


E³A (2016-present)
-  President (2018-2023);
-  Certification training of Equine Practitioners;
-  Not assigned any patents and not engaged in any IP related activities.

Novo Tellus Capital Partners (2016-2017)
-  Novo Tellus is an investment firm.  I served as a technical advisor in reviewing the technology and contracts of investment opportunities.

UTAC (2008-2016)
-  Technical consultant in matters related to packaging test and assembly, patents, and contracts.

ICS Radiation Technology (1988-2009)
-  Consulting work related to nuclear radiation effects testing.

Creative Management Consultants (CMC) (2003-2004)
-  Consulting work related to Internet services, such as access service to clients and web site hosting services; providing business co-op services and internet product purchasing sites.

Hatcreek Partners (1999-2003)
-  Hatcreek Partners is an investment firm.  I served as a technical advisor in reviewing the technology of investment opportunities.

nLine Corporation (1999-2003)
-  Member of Technical Advisory Board;
-  nLine Corp.'s business related to semiconductor holographic High Aspect Ratio Inspection (HARI) technology.

Texas Instruments (pre 2002)
   - Patent evaluation and application consulting.

CONTACT :  M<sup>c</sup>Alexander Sound, Inc.
           101 W. Renner Rd., Suite 350
           Richardson, TX  75082-2016
           (972) 421-4411          direct
           (214) 542-1772          cell
           (972) 421-4422          fax
           joemc@ieee.org          email